**The McGRAW–HILL COMPANIES, INC., Plaintiff,**

v.

**INGENIUM TECHNOLOGIES CORPORATION, Defendant.**

No. 05 Civ. 2127.

United States District Court, S.D. New York.

April 6, 2005.

lying claims. *See* Pl.'s Summ. J. Mem. at 25. Those claims have now been deemed barred.

Adam J. Richards, E. Evans Wohlforth, Oren J. Warshavsky, Gibbons, Del Deo, Dolan, Griffinger & Vecchione (N.Y.), New York City, David J. Sheehan, Gibbons, Del Deo, Griffinger & Vecchione, P.C.,(NJ), Newark, NJ, for Plaintiff.

Edwin Francis Chociey, Jr., Riker Danzig Scherer Hyland Perretti LLP, Morristown, NJ, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Earlier today, the Court granted plaintiff's motion for a temporary restraining order. *See* Order, 4/6/05. Specifically, the order directed that defendant Ingenium Technologies Corporation and its agents be prohibited, upon pain of contempt, from communicating before 5 p.m. Monday, April 11, 2005, with any United States customers of the McGraw–Hill Construction Network's Premium service regarding the upcoming termination of the contract between defendant and plaintiff McGraw–

Hill Companies, Inc. on June 30, 2005 or its supposed consequences. This Memorandum Order sets forth the basis for that ruling.

Late last week, as the parties were completing briefing on plaintiff's motion for a preliminary injunction and defendant's motion to dismiss, both of which are to be heard on April 11, 2005, at 2 p.m., plaintiff requested permission to file a motion for a temporary restraining order. The Court, having already preliminarily reviewed the underlying motion papers, declined to take further briefing, but instructed the parties to appear for argument yesterday. At the argument, however, the parties provided certain additional information that the Court has taken into account.

Since the year 2000, plaintiff and defendant have been partners in the provision of a subscription service that provides information about the construction industry, with plaintiff providing the actual data and defendant providing software that allows customers to manipulate the data. On their face, the subscription contracts are between plaintiff and the customers; defendant has no contractual customers of its own. Defendant, however, asserts that it has considerable direct contact with the customers who subscribe to the highest level of service, known as the Premium Service, and works with these customers to customize their service in various ways.

On July 1, 2004, the parties agreed that their partnership agreement would terminate as of July 1, 2005. Plaintiff is developing its own software platform, known as the Platinum Service, that would take the place of defendant's. Defendant, however, wishes to convince at least some Premium Service subscribers to bifurcate their service, continuing to get data from plaintiff but also contracting with defendant to provide the software and related logistical assistance.

Against this background, defendant, on March 31, 2005—*i.e.*, after the Court already had scheduled the April 11 hearing of plaintiff's preliminary judgment motion and after the parties had begun briefing in preparation for that motion practice—sent an e-mail to Premium Service subscribers that, in seemingly misleading fashion, represented that the service they subscribe to, though "marketed and distributed" by plaintiff "under the brand name" of plaintiff's trademark McGraw–Hill Construction Network, has been "provided by" defendant. It informed subscribers that the "Marketing and Distribution Agreement" between the two companies would end on June 30, 2005, but "assure[d]" them that defendant would continue to provide these services "in conjunction with" plaintiff after that date. Defendant told subscribers that, at the conclusion of their contracts with plaintiff, defendant would "offer to provide [them] with services under a separate arrangement directly with" defendant; if a subscriber accepted this offer to "continue with" defendant, it would have to contract separately with plaintiff for the provision of data. In closing, defendant said its representatives would be contacting subscribers "to discuss [their] options."

On its face, this e-mail is likely to engender considerable confusion among plaintiff's customers as to both the source and the future of their service, and at oral argument plaintiff's counsel referenced e-mails from various customers (one of which he quoted) evidencing that such confusion has occurred. Among other things, the customers want to know whether they need to make a choice, and if so, what their options are—matters that neither party can rightly advise them on until certain pending legal issues are preliminarily resolved by this Court (as well, perhaps, by a Canadian court also dealing with aspects of this matter).

■ Preliminary injunctive relief requires a showing that the moving party will suffer irreparable harm absent the injunction and that either (1) the moving party is likely to succeed on the merits or (2) there are serious questions relative to the merits and the balance of hardships tips in favor of the moving party. *N. Atl. Instruments, Inc. v. Fred Haber*, 188 F.3d 38, 43 (2d Cir.1999). So far as the short-term relief requested by plaintiff's motion for a temporary restraining order is concerned, plaintiff has satisfied this standard.

■ For example, one of plaintiff's claims in its complaint is a trademark claim premised on confusion. "In a trademark action, a showing of confusion as to the source of a product ordinarily will establish that a risk of irreparable harm exists as to the reputation of the trademark sought to be protected." *Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 109 (2d Cir.1986). Here, the specific claim is that defendant has or is likely to engage in "reverse palming off," a form of trademark infringement where: (1) the product at issue originates with the plaintiff; (2) the origin of the product is falsely designated by the defendant; (3) the false designation of origin causes consumer confusion; and (4) the plaintiff is harmed by such confusion. *See Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 131 (2d Cir.2004).

■ Plaintiff has raised the requisite "serious questions" as to whether such reverse palming off took place. Defendant has communicated with Premium subscribers and left them with the impression that this service (which uses plaintiff's trademarked name) originates, at least in part, with defendant. Moreover, defendant has stated unequivocally that, after June 30, 2005, the software and technical support aspects of the service will originate wholly with defendant. Whether this service has in fact been provided at least in part by defendant and who will provide the service going forward are questions at the heart of this dispute, and the Court offers no opinion at this time as to the merits. For now, the Court observes only that the fact that customers' service contracts are with plaintiff lends natural credence to plaintiff's position.

The balance of the equities tips decisively in favor of plaintiff. Defendant has offered the Court no reason why holding off on these communications for a few days will substantially impact its ability to provide services to customers after June 30, should it prevail on the merits. On the other hand, there is great potential that plaintiff's relationship with long-term customers, including the good will it has built up in its trademarked brand name, could be severely undermined in a way that would be difficult to quantify in monetary damages if plaintiff prevails. *See Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir.2004). In addition, the Court finds it effectively misleading for defendants to publicly stake out a position that essentially assumes defendants will prevail in this case less than two weeks before the parties are scheduled to receive considerable guidance from the Court regarding their respective rights. Defendant's actions seem calculated to shift the status quo as to a material fact being litigated— that is, whose customers these subscribers are.

■ Finally, defendant's position that, because it is a Canadian company, no injunction can issue against it under the Lanham Act, must be rejected. While legal questions are raised when courts attempt to apply the Act extraterritorially, *see Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1006 (2d Cir. 1997), no such application is involved here. Plaintiff's allegation is that defendant has violated the Act in the United States

through inappropriate solicitations of customers located within the United States. In an excess of caution, the Court has limited its temporary restraining order to communications with United States customers.

For the foregoing reasons, the Court issued a temporary restraining order earlier today barring defendant and its agents from communicating before 5 p.m. Monday, April 11, 2005 with any United States customers of the McGraw–Hill Construction Network's Premium service regarding the termination of the contract between plaintiff and defendant on June 30, 2005 or its supposed consequences. As stated earlier, the Court will take this matter up further on April 11, 2005 at 2 p.m. when it hears arguments on plaintiff's motion for a preliminary injunction and defendant's motion to dismiss.

SO ORDERED.